IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

BILLIE-JO M.,[1]                                              Case No. 6:19-cv-00092-SB

                Plaintiff,                                  **OPINION AND ORDER**

          v.

ANDREW M. SAUL, Commissioner of Social
Security,

                Defendant.

_____

**BECKERMAN, U.S. Magistrate Judge.**

      Billie-Jo M. ("Plaintiff") brings this appeal challenging the Commissioner of the Social

Security Administration's ("Commissioner") denial of her application for Supplemental Security

Income ("SSI") under Title XVI of the Social Security Act. The Court has jurisdiction to hear

this appeal pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons explained below, the

Court reverses the Commissioner's decision and remands for further administrative proceedings.

///

_____

      [1] In the interest of privacy, this opinion uses only the first name and the initial of the last
name of the non-governmental party in this case. Where applicable, this opinion uses the same
designation for a non-governmental party's immediate family member.

PAGE 1 – OPINION AND ORDER

**STANDARD OF REVIEW**

The district court may set aside a denial of benefits only if the Commissioner's findings are "'not supported by substantial evidence or [are] based on legal error.'" *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). Substantial evidence is defined as "'more than a mere scintilla [of evidence] but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

The district court "cannot affirm the Commissioner's decision 'simply by isolating a specific quantum of supporting evidence.'" *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). Instead, the district court must consider the entire record, weighing the evidence that both supports and detracts from the Commissioner's conclusions. *Id.* Where the record as a whole can support either a grant or a denial of Social Security benefits, the district court "'may not substitute [its] judgment for the [Commissioner's].'" *Bray*, 554 F.3d at 1222 (quoting *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)).

**BACKGROUND**

**I.    PLAINTIFF'S APPLICATION**

Plaintiff was born in December 1964, making her fifty years old on January 1, 2003, the alleged disability onset date. (Tr. 91.) Plaintiff completed school through the tenth grade and did not earn a GED. (Tr. 74, 194.) She has past relevant work as a caregiver. (Tr. 42.) In her application, Plaintiff alleges disability due to mental illness, depression, panic attacks, PTSD, and headaches. (Tr. 91.)

The Commissioner denied Plaintiff's application initially and upon reconsideration, and on September 11, 2015, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 34.) Plaintiff and a vocational expert ("VE") appeared and testified at a hearing held on May 18, 2017. (Tr. 68-89.) On October 24, 2017, the ALJ issued a written decision denying Plaintiff's application. (Tr. 34-44.) On November 16, 2018, the Appeals Council denied Plaintiff's request for review, thereby making the ALJ's written decision the final decision of the Commissioner. (Tr. 1-4.) Plaintiff now seeks judicial review of the ALJ's decision. (Compl. at 1.)

## II.    THE SEQUENTIAL PROCESS

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are: (1) whether the claimant is currently engaged in any substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the claimant is capable of performing other work that exists in significant numbers in the national economy. *Id.* at 724-25. The claimant bears the burden of proof for the first four steps. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the burden at any of those steps, the claimant is not disabled. *Id.*; *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987).

///

PAGE 3 – OPINION AND ORDER

The Commissioner bears the burden of proof at step five of the sequential analysis, where the Commissioner must show the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett*, 180 F.3d at 1100. If the Commissioner fails to meet this burden, the claimant is disabled. *Bustamante*, 262 F.3d at 954 (citations omitted).

## III.    THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation process to determine if Plaintiff is disabled. (Tr. 36-44.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since January 7, 2015, the alleged disability onset date. (Tr. 36.) At step two, the ALJ determined that Plaintiff suffered from the following severe impairments: (1) "pseudo-dementia," (2) "borderline intellectual functioning," (3) "generalized anxiety disorder," (4) "persistent depressive disorder," (5) fibromyalgia, and (6) polyarthralgia. (Tr. 37.) At step three, the ALJ concluded that Plaintiff did not have an impairment that meets or equals a listed impairment. *Id.* The ALJ then concluded that Plaintiff had the residual functional capacity ("RFC") to perform no more than medium work, subject to these limitations: (1) Plaintiff can "understand, remember, and carry out simple repetitive tasks" (2) with no public contact and no more than occasional contact with coworkers. (Tr. 39.) At step four, the ALJ concluded that Plaintiff could not perform her past work as a caregiver. (Tr. 42.) At step five, considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that Plaintiff could perform the following jobs which exist in significant numbers in the national economy: "janitor," "budder," and "cleaner II." (Tr. 43.) Therefore, the ALJ determined that since her application date, Plaintiff was not disabled within the meaning of the Social Security Act. (Tr. 43-44.)

**DISCUSSION**

In this appeal, Plaintiff argues that the Commissioner erred by failing to: (1) provide specific, clear, and convincing reasons for discounting Plaintiff's symptom testimony; and (2) consider the opinion of two of Plaintiff's treating physicians, Robert Choi, M.D. and Pamela Birrell, Ph.D. (Pl.'s Br. at 7.) As explained below, the Court concludes that the ALJ's decision is based on harmful legal error and not supported by substantial evidence, and therefore the Court reverses the Commissioner's decision and remands for further proceedings.

## I.    PLAINTIFF'S SYMPTOM TESTIMONY

### A.    Applicable Law

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited[.]" *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)). Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives specific, clear and convincing reasons for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citation and quotation marks omitted).

Under Ninth Circuit case law, clear and convincing reasons for rejecting a claimant's subjective symptom testimony "include conflicting medical evidence, effective medical treatment, medical noncompliance, inconsistencies in the claimant's testimony or between her testimony and her conduct, daily activities inconsistent with the alleged symptoms, and testimony from physicians and third parties about the nature, severity and effect of the symptoms

complained of." *Bowers v. Astrue*, No. 11-cv-583-SI, 2012 WL 2401642, at *9 (D. Or. June 25, 2012) (citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008), *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007), and *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)).

**B.    Analysis**

Plaintiff completed an adult function report as part of the SSI application process, dated March 10, 2015. (Tr. 201-08.) She alleged that daily living has become difficult for her because she has difficulty remembering and concentrating on various tasks. (Tr. 201.) She further asserted that she suffers from panic attacks and therefore has difficulty interacting with others. *Id.* She noted that her "mind and hand seem not to connect," which requires her to seek help "all the time." *Id.* She indicated that, on a daily basis, she attempts to do "nothing if I can help it," and that her memory issues make it difficult for her to remember to clean and eat, and that she always feels like sleeping. (Tr. 202.) Plaintiff indicated she is able to feed and bathe her pets if needed. *Id.* She is able to prepare simple meals using her microwave oven, but does not use her stove in case she forgets that she is cooking. (Tr. 203.) Plaintiff is able to vacuum and do laundry with difficulty, and grocery shop with assistance. (Tr. 204.) Plaintiff noted that she has lost interest in all of her previous hobbies and pastimes, and just sits and does "nothing" most of the time. *Id.* Plaintiff's concentration limitations keep her from paying attention for more than a minute at a time, completing tasks that she begins, understanding written or oral instruction, and render her unable to handle stress. (Tr. 206-07.) Plaintiff felt that she was becoming progressively more dysfunctional. (Tr. 208.)

Plaintiff provided similar testimony regarding her mental impairments at her May 18, 2017 hearing. She testified that she typically sits on her couch and watches television. (Tr. 78.) She explained that she previously received SSI benefits for the impairments of PTSD and panic

disorder, and that those conditions were progressively worsening.[2] (Tr. 76.) She noted that she rarely leaves her home and is unable to do her own shopping. *Id.* She no longer babysits her grandchildren because of her memory problems, including forgetting the name of her grandchild. (Tr. 77.) Plaintiff explained that she was diagnosed with fibromyalgia, which impairs her ability to stand up, and that she experiences pain in her legs and back, in addition to dizziness. (Tr. 79, 83.) Her doctors have offered her medication for fibromyalgia, but she was afraid of taking them based on bad reactions and side effects. *Id.* When the ALJ inquired why Plaintiff had such a limited history of mental health treatment, she explained that she could not afford it. (Tr. 81.) She further explained that she recently began therapy after being guided to relevant service providers. *Id.* Plaintiff endorsed continuing panic attacks whenever she leaves her home. (Tr. 83.) Plaintiff testified she could not perform simple, routine work because she cannot remember written or oral instructions, and that her concentration issues would prevent her from "keeping up" with normal workplace duties. (Tr. 84.)

The ALJ reviewed and summarized Plaintiff's function report and her hearing testimony. (Tr. 39.) The ALJ found it notable that in Plaintiff's function report, she did not allege limitations in lifting, standing, or sitting, in contrast to her testimony at the hearing.[3] (Tr. 39-40.) Finding that Plaintiff's allegations regarding her worsening mental health (1) were inconsistent with her limited treatment history, and (2) her treatment record and consultative examination

---

[2] The administrative record includes the October 6, 1998 ALJ decision awarding SSI benefits to Plaintiff for the period beginning February 1, 1998, based on the following mental impairments: "depression, an anxiety disorder, and personality disorder." (Tr. 64.) The Court notes that the ALJ denied Plaintiff's request "to locate and review" the 1998 decision because "[i]t is vague and not relevant to the current application and medical evidence." (Tr. 34.) Plaintiff does not challenge the ALJ's denial of review.

[3] Plaintiff does not directly dispute the ALJ's findings regarding her physical impairment allegations. (*See* Pl's Br.; Pl's Reply.)

findings did not corroborate her claims of doing nothing all day and an inability to do household chores, the ALJ determined that Plaintiff's subjective symptom allegations were inconsistent with the record as a whole. (Tr. 40.)

There is no evidence of malingering here and the ALJ determined that Plaintiff has provided objective medical evidence of underlying impairments which might reasonably produce the symptoms alleged. (*See* Tr. 40 (reflecting that the ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms").) The ALJ was therefore required to provide clear and convincing reasons for discrediting Plaintiff's testimony. *See Ghanim*, 763 F.3d at 1163. The ALJ did not meet the standard here.

### 1.    Limited Treatment Record

The Ninth Circuit has "long held that, in assessing a claimant's credibility, the ALJ may properly rely on unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) (quoting *Tommasetti*, 533 F.3d at 1039); *see also Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (same). However, "[a]lthough a conservative course of treatment can undermine allegations of debilitating pain, such fact is not a proper basis for rejecting the claimant's credibility where the claimant has a good reason for not seeking more aggressive treatment." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (quoting *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007)). Here, the ALJ found that "[c]oncerning the claimant's mental impairments, the treatment record is extremely limited." (Tr. 40.) The ALJ also observed that, considering Plaintiff's alleged problems with memory and panic causing a decline in functioning, "it would be reasonable to expect an individual would seek out additional treatment." (Tr. 39.)

Plaintiff contends that her limited mental health treatment record was "at least in part" a result of her mental health symptoms. (Pl.'s Br. at 9 (citing *Garrison*, 759 F.3d at 1018 n.24 ("It is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.") (citation omitted).) At her hearing, Plaintiff explained that she had only recently restarted mental health counseling because she "didn't have any money . . . [i]t took me a while to figure out how to do it but I got like a person at Behavioral Sciences to point me in the right direction," but that she still had difficulty, as she "was scared because I was trying to go someplace I don't know if I would remember if I walked in the door where I was going, who I was talking to." (Tr. 81.) Plaintiff cites Social Security Ruling ("SSR") 82-59 for its guidance that failure to follow a prescribed treatment regimen may be excused where a plaintiff has provided justifiable reasons for such failure, including inability to afford treatment or intense fear of surgical treatment. (Pl.'s Br. at 9 (citing SSR 82-59, *available at* 1982 WL 31384).) As such, Plaintiff maintains that her fear of not knowing how to proceed with, or attend, relevant treatment is the equivalent of the fear of surgical treatment as discussed in SSR 82-59.

Plaintiff's arguments are well taken. As a threshold matter, the ALJ did not provide any basis for rejecting the first reason Plaintiff provided for not seeking treatment more aggressively: her financial constraints. (Tr. 81.) As noted above, a financial barrier is a valid justification for failure to seek treatment, as codified in SSR 85-29, and regularly applied by the Ninth Circuit. *Supra.* In the absence of any discussion by the ALJ regarding Plaintiff's otherwise valid rationale for her failure to seek regular mental health treatment, the ALJ's "failure to seek treatment" finding does not meet the rigorous clear and convincing legal standard. *See Garrison*, 759 F.3d at 1015 ("The clear and convincing standard is the most demanding required in Social Security cases.") (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Further, Plaintiff's second explanation for failing to seek treatment is also consistent with the record as a whole. Plaintiff's allegations that she did not seek out mental health treatment because she was afraid of forgetting where she was going and who she would talk to is consistent with her mental health diagnoses of pseudo-dementia, borderline intellectual functioning, generalized anxiety disorder, and persistent depressive disorder, all impairments which the ALJ found to be severe at step two. (Tr. 37.) The medical record confirms both Plaintiff's memory problems and her fear and anxiety related to leaving the home and interacting with others. For example, consultative examiner William McConochie, Ph.D., who provided mental functioning assessments to which the ALJ accorded "great weight," noted that Plaintiff's borderline intellectual functioning was likely "a characteristic of her life-long functioning . . . [and] recent memory problems may be more a function of increasing loneliness and depression[.]" (Tr. 384.) Dr. McConochie concluded that Plaintiff's "primary psychological limitations to work activity are borderline intellectual functioning, anxiety, and depression." (Tr. 385.) The doctor also noted that Plaintiff was moderately limited in her ability to engage socially based on "fear, anger, and self-isolation." *Id.*

Treating physician H. Robert Choi, M.D., similarly opined that Plaintiff's "[c]linical evidence of memory difficulties [was] mostly consistent with pseudodementia." (Tr. 456.) A mental status examination in July 2015 reflected that Plaintiff's mood was depressed and apprehensive, with both recent and remote memory impairments. (Tr. 453.) Four months later, Plaintiff's treatment reached an "unplanned conclusion," when, "[a]fter numerous contacts from the billing department and no efforts to re-engage in services," the provider closed her file. (Tr. 447.) When Plaintiff eventually returned for treatment in 2017, she explained that she had missed appointments due to memory problems, and disclosed continuing panic attacks. (Tr. 440.) Her

mood was noted to be depressed, and her thought processes were remarkable for "[b]locking—can't remember what was being said." (Tr. 442.) All of this evidence is consistent with the reasons Plaintiff provided for her irregular treatment history. As such, the ALJ erred by discounting Plaintiff's symptom testimony based on her limited mental health treatment record.

### 2.    Plaintiff's Activities

It is well settled that an ALJ may discount a claimant's testimony based on activities that are incompatible with the claimant's testimony regarding the severity of her symptoms. *See Burrell v. Colvin*, 775 F.3d 1133, 1137-38 (9th Cir. 2014) ("Inconsistencies between a claimant's testimony and the claimant's reported activities provide a valid reason for an adverse credibility determination."); *Garrison*, 759 F.3d at 1016 (explaining that a claimant's activities have "bearing on [his or her] credibility" if the reported "level of activity" is "inconsistent with [the claimant's] claimed limitations"); *Ghanim*, 763 F.3d at 1165 ("Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination."). Even where the claimant's "activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113 (citation omitted).

The ALJ found that the treatment record and consultative examination do not corroborate Plaintiff's claims of doing essentially nothing all day and being unable to do household chores. However, the basis for the ALJ's finding is unclear. Consultative examiner Dr. McConochie interviewed Plaintiff and summarized her daily activities, noting that she is able to dress and bathe herself, tie her shoes, and make a telephone call. (Tr. 382.) Although Plaintiff stated she was able to drive, Plaintiff also indicated she usually avoided driving because she finds herself unable to concentrate. *Id.* Plaintiff reported that she forgets what she is doing when performing household tasks, cooks only with her microwave, has no friends, and works on her computer

modifying photographs she has taken. *Id.* Plaintiff stated that on a typical day, "she sits on her couch with her computer and walks her dogs." (Tr. 383.) Contrary to the ALJ's finding, Plaintiff's statements to the examiner were consistent with her own adult function report: she endorsed poor concentration that interfered with her ability to compete her "duties," that she uses her microwave because she no longer cooks, remains able to drive, and just sits doing nothing most of the time. (Tr. 201, 203-06.)

Furthermore, Dr. McConochie assessed on examination that Plaintiff's memory functioning was in the borderline range overall, "consistent with her complaint of memory problems in her daily life." (Tr. 384.) The doctor also assessed that Plaintiff's auditory memory was "in the mild intellectual disability range." *Id.* Dr. McConochie concluded that Plaintiff's primary barriers to working were "borderline intellectual functioning, anxiety, and depression." (Tr. 385.) He concluded that Plaintiff's prognosis was poor, and he opined that her intellectual functioning level "is probably congenitally based," suggesting she has always had such limitations. *Id.* As such, Dr. McConochie's consultative examination corroborated not only Plaintiff's alleged degree of limited functioning in daily activities, but also her reports of significant problems with intellectual functioning overall including memory problems, anxiety, and depression.

The Commissioner argues that the ALJ's finding was clear and convincing to the extent Plaintiff was able to recall events in good detail in May 2017, and that her mental status examination was normal, including memory, concentration, and attention. (Def.'s Br. at 7.) However, the event Plaintiff remembered in good detail was an occasion where she was unable to remember the name of her own grandson. (Tr. 456.) Additionally, the provider acknowledged "[c]linical evidence of memory difficulties mostly consistent with pseudodementia, despite her

mental status examination demonstrating "appropriate alertness, orientation, speech, memory, attention, and fund of knowledge." *Id.* As such, the May 2017 clinical visit is not clear and convincing evidence that Plaintiff's symptom allegations were not reliable.

Similarly, although the Commissioner argues that Plaintiff's "most recent mental health assessment in March 2017" demonstrated no memory impairment, unimpaired concentration and attention, normal affect, and average cognitive ability, the record is not clear. (*See* Def.'s Br. at 7.) Indeed, the check-the-box mental status examination the Commissioner cites reflects that the first box in every domain was checked, while several domains included checks in subsequent boxes, resulting in an ambiguous form. For example, in the domain of "mood," the first box for "unremarkable" was checked, but a subsequent box for "depressed" was also checked. (Tr. 442.) Similarly, the domain of "thought process" included check marks for both "unremarkable" and "blocking—can't remember what was being said," in addition to "unclear." *Id.* In the domain of "alertness," both "alert" and "lethargic" were marked. *Id.* In the domain of "memory," both "no impairments" and "unclear" were marked. *Id.* Under "speech," both "unremarkable" and "monotonous" were marked. *Id.* Thus, the Commissioner's argument that the March 2017 clinical visit affirmatively demonstrates that Plaintiff's symptoms were simply "unremarkable" is not clear and convincing evidence that her symptom testimony was unreliable.

The Court concludes that the ALJ's reasons for rejecting Plaintiff's subjective symptom testimony were not clear and convincing. Absent valid, clear and convincing reasons for rejecting Plaintiff's subjective symptom testimony, the appropriate remedy is remand. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1107 (9th Cir. 2014) (holding that remand is the proper remedy where the ALJ fails to provide clear and convincing reasons to reject a claimant's symptom testimony).

## II.    MEDICAL OPINION EVIDENCE

### A.    Applicable Law

"There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009) (citing *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)). In the event "a treating or examining physician's opinion is contradicted by another doctor, the '[ALJ] must determine credibility and resolve the conflict.'" *Id.* (citation omitted). "An ALJ may only reject a treating physician's contradicted opinions by providing 'specific and legitimate reasons that are supported by substantial evidence.'" *Ghanim*, 763 F.3d at 1161 (citation omitted).

"An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" *Garrison*, 759 F.3d at 1012 (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). Merely stating conclusions is insufficient: "'The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.'" *Id.* (quoting *Reddick*, 157 F.3d at 725). "[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Id.* at 1012-13 (citation omitted).

### B.    Analysis

Plaintiff argues that the Commissioner inappropriately rejected the opinions of Plaintiff's treating physicians, Drs. Choi and Birrell. (Pl.'s Br. at 12-14.) Notably, both opinions, rendered in October 2017 and December 2017, respectively, post-date the ALJ's decision. (Tr. 20-22, 27-

28.) Plaintiff submitted the opinions for the Appeals Council's consideration, and the Appeals

Council considered but rejected the opinions as irrelevant to the adjudicatory period. (Tr. 2.) As

the Commissioner asserts, "the relevant question is whether these late opinions from Dr. Choi

and Dr. Birrell deprive the ALJ's decision of substantial evidence." (Def.'s Br. at 8 (citing

*Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1164 (9th Cir. 2012)).) Because the

Appeals Council added these opinions to the administrative record after the date of the decision,

they are properly before this Court, and the Court must consider the new evidence in its review

of the record as a whole. *See Brewes*, 682 F.3d at 1164.

      Dr. Choi, on October 25, 2017, noted that Plaintiff underwent an EEG study, "which

showed some slowing over the left temporal area." (Tr. 20.) The doctor also noted Plaintiff's

continuing complaints of "[m]emory decline along with spells of spacing out." *Id.* He opined that

Plaintiff's symptoms "could be temporal lobe epilepsy . . . [h]owever there may also be some

element of pseudodementia." *Id.* Dr. Choi concluded that Plaintiff "is simply unable to work

because of these cognitive problems," and that "[a]t this point, she is completely disabled from

any work." *Id.*

      Dr. Birrell, on December 28, 2017, completed a form entitled "Medical Opinion Re:

Ability to Do Work-Related Activities (Mental)." (Tr. 27-28.) The doctor opined that Plaintiff

was "seriously limited" in the domains of understanding, remembering, and carrying out short

and simple instructions, asking simple questions or requesting assistance, and getting along with

co-workers without unduly distracting them. (Tr. 27.) Dr. Birrell further opined that Plaintiff was

"unable to meet competitive standards" in the domains of remembering work-like procedures,

maintaining attention for two hour segments, maintaining regular attendance, sustaining an

ordinary routine without special supervision, working in coordination with others without undue

distractions, making simple work-related decisions, completing a normal workday and work week without interruptions from psychologically based symptoms, performing at a consistent pace without unreasonable breaks, accepting instructions and responding appropriately to criticism from supervisors, and being aware of hazards and taking appropriate precautions. *Id.* Dr. Birrell further indicated Plaintiff had "no useful ability to function" in the domains of responding appropriately to changes in a routine work setting and dealing with normal work stress. *Id.*

Dr. Birrell explained that the reason for Plaintiff's most severe limitations was "[u]nclear—possibly severe disassociation." *Id.* Dr. Birrell added that Plaintiff's depression also impairs her ability to function, and believed that she would be expected to miss more than four workdays per month due to her mental impairments. (Tr. 28.)

The Commissioner argues that Dr. Choi's assessment that Plaintiff was "completely disabled from any work" constitutes an opinion "on issues reserved to the Commissioner," and is therefore not worthy of "any special significance." (Def.'s Br. at 8 (citing 20 C.F.R. § 416.927(d)).) The Court acknowledges that "[a] disability is an administrative determination of how an impairment, in relation to education, age, technological, economic, and social factors, affects ability to engage in gainful activity." *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011). Nevertheless, "a treating physician's evaluation of a patient's ability to work may be useful or suggestive of useful information[.]" *Id.* Indeed, "physicians may render medical, clinical opinions, *or they may render opinion on the ultimate issue of disability—the claimant's ability to perform work.*" *Garrison*, 759 F.3d at 1012 (emphasis added).

The Court concludes that the post-decision opinions of Drs. Choi and Birrell are probative to Plaintiff's alleged disability. First, the opinions corroborate Plaintiff's self-reported

symptoms and level of mental functional limitations, which the ALJ erroneously rejected for the reasons discussed in the previous section. *See supra.* Furthermore, both Drs. Choi and Birrell treated Plaintiff: Dr. Choi treated Plaintiff both prior to and after the date of the ALJ's decision, while Dr. Birrell treated Plaintiff beginning in December 2017. (Tr. 18-22, 29-30, 354-56, 456-57.) As such, their opinions should not be rejected merely because they post-dated the ALJ decision, as "[e]ven when contradicted, a treating or examining physician's opinion is still owed deference and will often be 'entitled to the greatest weight . . . even if it does not meet the test for controlling weight.'" *Garrison*, 759 F.3d at 1012 (quoting *Orn*, 495 F.3d at 633). Therefore, the Commissioner's assertion that these opinions would not alter the calculus of substantial evidence in this case is unpersuasive.

The Commissioner also argues that because Dr. Birrell did not treat Plaintiff until after the date of the ALJ decision, her chart notes and opinion are relevant only to a subsequent application because this Title XVI case is limited to determining whether Plaintiff was disabled during the adjudicatory period between her SSI application date and the date of the ALJ's decision. (Def.'s Br. at 9-11.) In support, the Commissioner asserts that "[p]ost decision evidence—even a subsequent finding of disability—is not necessarily material to the period adjudicated by the ALJ." (Def.'s Br. at 9 (citing *Bruton v. Massanari*, 268 F.3d 824, 827 (9th Cir. 2001)).)

In *Bruton*, the Ninth Circuit considered if evidence of a subsequent application for disability benefits was material to an appeal of a prior non-disability decision. *Bruton*, 268 F.3d at 827. The Ninth Circuit determined that the subsequent grant of disability benefits was not material because the second application "involved different medical evidence, a different time period, and a different age classification." *Id.* Here, in contrast, the post-decision evidence

involves related medical evidence to the extent that the diagnoses and symptoms are substantially similar to the medical evidence that predated the ALJ's decision.

Indeed, the Commissioner's argument disregards that Plaintiff's mental limitations are "probably congenitally based." As such, insofar as Plaintiff's mental impairments are congenital and the post-decision opinions of Drs. Choi and Birrell are generally consistent with the symptoms and medical assessments that pre-dated the decision, their opinions are relevant to Plaintiff's alleged disability. In this context, these post-decision opinions are relevant because they corroborate Dr. McConochie's 2015 opinion that Plaintiff's prognosis was poor (Tr. 385), which undermines the ALJ's determination that Dr. McConochie's prognosis warranted only "little weight." (*See* Tr. 41-42.)

Finally, the Commissioner identifies examples of Plaintiff demonstrating "mild symptoms" and "normal mental status examinations." (Def.'s Br. at 10 (citing Tr. 264, 275, 295, 345, 355, 382, 429, 442, 456).) Although some of Plaintiff's psychiatric screenings reflected "normal" mental status examinations, such evidence does not invalidate her history of serious mental health symptoms. *See Garrison*, 759 F.3d at 1017 ("Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working."). The Commissioner's citation to Plaintiff's March 4, 2014 brain MRI, showing "no significant intracranial lesions" (Tr. 345), is also unpersuasive, as a claimant is not required to provide objective medical evidence to confirm the severity of her alleged mental health symptoms. *Garrison*, 759 F.3d at 1014 (citation omitted).

///

Despite the Commissioner's assertion that many of Plaintiff's mental status examinations were "mostly normal," nearly all of Plaintiff's treating providers believed that her functional limitations were significantly more severe than the exam results suggested. (*See* Tr. 20 (Dr. Choi opines Plaintiff is precluded from any work), 23 (Hope Lane, M.A. QMHP, indicates Plaintiff's diagnoses include PTSD and "Persistent Depressive Disorder, severe, with anxious distress, with intermittent major depressive episodes, with current episode" in April 2017), 27-28 (Dr. Birrell assesses work-precluding functional limitations), 385 (Dr. McConochie opines Plaintiff's borderline intellectual functioning, including memory problems, are congenital and offers a poor prognosis).)

For all of these reasons, and considering the record as a whole (including the opinions of Drs. Choi and Birrell), the Court concludes that the ALJ's evaluation of the medical evidence is not supported by substantial evidence.

## III.    REMEDY

### A.    Applicable Law

"Generally when a court of appeals reverses an administrative determination, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citation omitted). In a number of cases, however, the Ninth Circuit has "stated or implied that it would be an abuse of discretion for a district court not to remand for an award of benefits when [the three-part credit-as-true standard is] met." *Garrison*, 759 F.3d at 1021 (citations omitted).

The credit-as-true standard is met if three conditions are satisfied: "(1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; (2) the record has been fully developed and further administrative proceedings would serve no useful purpose; and (3) if the improperly discredited evidence were credited as

PAGE 19 – OPINION AND ORDER

true, the ALJ would be required to find the claimant disabled on remand." *Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015) (citations omitted). Even when the credit-as-true standard is met, the court retains the "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Garrison*, 759 F.3d at 1021.

### B.    Analysis

The Court finds that a remand for an immediate award of benefits is not appropriate here. Although the Court finds that the ALJ erred, as discussed herein, the Court may remand for benefits only if "the record has been fully developed and further administrative proceedings would serve no useful purpose." *Brown-Hunter*, 806 F.3d at 495. Plaintiff submitted new, post-decision medical evidence that the ALJ has not had an opportunity to evaluate. Under these circumstances, "[a] remand to the agency for further proceedings to fully develop the record is the appropriate remedy." *Powell v.* Colvin, No. 6:14-cv-01900-SI, 2016 WL 706199, at *7 (D. Or. Feb. 22, 2016) (remanding for further administrative proceedings where the claimant submitted new post-decision medical evidence).

## CONCLUSION

For the reasons stated, the Court REVERSES the Commissioner's decision and REMANDS for further administrative proceedings.

**IT IS SO ORDERED.**

DATED this 18th day of May, 2020.

_____
STACIE F. BECKERMAN
United States Magistrate Judge